Then we will hear argument in our third case, number 20-2021, K & R Contractors v. Keene. May it please the court, my name is Charity Barger. I, along with Tom Scott, represent K & R Contractors, the petitioner in this appeal. Your honors, I would submit that the issues before the court today are complicated, but highly important in federal black lung. We've been arguing the issues of unconstitutional employment and removal protections for a long time. In fact, the entire time I've been licensed as an attorney. So I'm grateful to be here before you today and to discuss our position. My plan, the roadmap for today, I plan to discuss ALJ Bartow's ratification first, then ALJ Applewhite's appointment, then the removal protections, unless the court would prefer a different order. That's how I'll proceed. Starting with ratification, since Lucia, the issue of ratification has not fully been addressed by this court in this context. It's rather unique. The Secretary of Labor attempted to retroactively cure an unconstitutional appointment by ratifying that unconstitutional appointment. The board narrowed the issue to focus solely on the last step of that appointment, which is the hiring by the staff member, which the director and the board and the director claimed to be an agent. The staff member was an agent, the Secretary of Labor, and therefore, that action could be ratified. What we submit, Your Honor, is that ratification is not a solution because the hiring process itself, the hiring process that purports to be ratified is unconstitutional. We've talked a lot about the hiring process, the competitive service hiring process. What happened before Lucia was the Office of Personnel Management posted job vacancies, administered examinations, interviewed and ranked candidates, and then the agencies would actually pick from the top-ranked candidates. The Tenth Circuit and the Supreme Court of the United States have found these type of hiring processes to be impermissible under the appointments clause because they create a diffusion of accountability. So we submit, Your Honor, that the Secretary of the time that these candidates were interviewed, examined, and then eventually selected by the staff members. Since Lucia, the process has changed. Can I ask you, counsel? I'm not sure I struggle with the logic of your argument. I don't think the Secretary understood himself to be appointing the ALJ. Okay. Why is that not okay? Is it your position that anyone who was once an ALJ sort of pre-Lucia cannot be then appointed as an ALJ? They can be ratified as an ALJ. The new process is very different from what it was before. The old process utilized the Office of Personnel Management to do everything, all the work before. But I thought they gave the Secretary, I'm so sorry, I'm blanking on the name of the ALJs, but they gave the Secretary the ALJs resume, right, and kind of work evaluations, and he looked at that and said, Yes, I want that person as an ALJ. So I'm not understanding why that would not be okay post-Lucia. Yes, I understand your argument, Your Honor. It's a genuine question. I'm just having trouble tracking. I understand. Our argument, Your Honor, is that if you really look at the way that everything occurred, the Secretary of Labor could not possibly have had much control over not only the candidates that he chose, but who was in the pool of applicants that he could have chosen from. And so what we're looking at is the entire process. Even in the executive order, the President mentions that the competitive examination process, that it actually takes away from the President's ability to choose who he wants to be in those positions because of the examinations, because of the rankings. And so that's why the process has been changed. So the Secretary of Labor has more of a control over who is able to actually be put in positions, not just who is the top ranked from the Office of Personnel Management. Does that answer your question? Probably, yes. Feel free to move on. All right. So basically, I think that we've put forth that argument. We have said that the entire process is the problem, and therefore, it cannot be ratified. Even the Office of Personnel Management is an independent agency. It was not hiring for the Secretary of Labor themselves, but actually many agencies. And so again, we don't believe that that process could have been ratified. Now, of course, if the only issue is the actual person, then yes, Your Honor, your point is well taken. And if that was the issue, not the entire process, then yes, he could have appointed and ratified that particular appointment. So we're going to move on to, unless there's any further questions on that, we're going to move on to the appointment of ALJ Applewhite. And this one is also kind of a difficult one as well, because the Director has said that this is a new appointment in the Accepted Service. Obviously, as Your Honors know, after Lucia, there was an executive order by the President that changed the way that these ALJs were being hired and they were put in the Accepted Service. Counsel? Yes. I don't want to hijack your argument, but I want to ask one question that I think only you will know the answer to. If, and I understand you will not agree with this hypothetical, but if we think that the ALJs were properly appointed, but we're concerned that there is a removal protection problem, what, if anything, is your remedy? Does Collins mean that you don't get a new hearing because you haven't made any showing that these ALJs were problematic? Do you, is there any remedy at all for your client, even if we find in your favor on removability? Yes, Collins has made that very difficult. Our original argument that we believe that Lucia, it would have been exactly the same for the removal protections, is that if there is an ALJ with removal protection issue, that the remedy would be we would get a new hearing before an ALJ that did not have those removal protections. But Collins has kind of changed the landscape just a bit for us. And so my understanding of Collins, and this has just barely come out, so I've only read it a few dozen times. But my understanding is that there are two different issues that we're dealing with, the retrospective and the prospective. Perspectively, there is a removal protections issue. And of course, that is our argument. And so it needs to be dealt with. Now, if, well, counsel, counsel, on the prospective remedy, so are you suggesting that you argued before the board the remedy question that you put before the board? Look, this is the prospective remedy that we would ask for. This is what it would look like. You should sever one layer of protection, keep one, or maybe get rid of both. I mean, I guess what I'm getting at is the board said your brief on this, and it's not like briefs have to be long, but the board didn't hear the removal issue on the merits because they said you forfeited it because you can't file a brief that has one paragraph, a citation to a case that by term says it doesn't apply to ALJs, and then just a sentence saying thus the separation of powers is violated, that you didn't ask for a remedy, you didn't discuss the remedial issue, you didn't say what protections these ALJs have under either statute. The board just said we can't work with this. You forfeited it. Unless that was arbitrary and capricious, how is this question in front of us now? Your honors, in my brief, I did speak to that, and I'm sorry, I'm trying to go back here to it. Well, you disagree with the board. You think your brief was sufficient, but I think we would have to say that that was an arbitrary and capricious application of its forfeiture rule, and I guess I'm having trouble getting there because, you know, just as a judge, and this is going to sound terribly personal, and I don't mean it that way. What I understood was you guys thought you had a very strong argument on the appointments clause, and so that's where you were sticking, and then sort of as a tag on at the end, you said, oh, also, maybe removal, but I mean, it doesn't even say what statutory protections these ALJs enjoy. It wasn't clear to me whether you were arguing that it was a dual-level protection problem or whether any removal protections at all, I mean, would violate, because the last sentence seemed to be that if they're insulated at all from removal by the secretary at will, I would have had trouble as a judge adjudicating this issue based on your briefs. I understand, Your Honor, and I think that my answer to that is that our understanding, when we wrote our brief, we did say that the removal protections was an issue, and perhaps we did not explain it as well as we should have, but the needs to be able to remove the judge at will. So this is not a free enterprise case. It's not about the dual levels, so you cited one case which is not applicable to your theory of the case. I mean, I just don't understand if this isn't even a free enterprise case. Well, it is a free enterprise case in that, Your Honor, the dual protections are free enterprise, but what we were saying is because of the dual protections that the ALJ was enjoying that... You don't say that the ALJ has dual protections. It doesn't even say that in this brief. I'm sorry, I'm getting all agitated because it can be so difficult sometimes. I understand. And again, I am not critiquing your brief writing. I feel this is terribly personal. I truly understood that you had made a strategic judgment, like we've got a really good appointments clause case, and that is what we would like to I think it is hard for us to say that the board was acting arbitrarily and capriciously when it sort of held you to that strategy and said, look, you briefed one issue. We're addressing it here on the merits. We're not going to address the other one because you didn't give us enough to go on. Right, right. I understand your argument, Your Honor, and I guess our position was that because it was a removal protections issue is that explaining that that was what we had before the court, that free enterprise supported, there should not be a dual protection. So that was enough for us. And the court finds that that was not enough. I understand that, but that for us, we seemed like that was. And yes, we did focus a lot on the appointments issue. And that's kind of where we landed. Does that answer your question? I'm sorry. Thank you. Yes, it does. Thank you very much. Yeah. I'm sorry, Judge Rushing, did I answer your question fully or was there more to it? I think there was. No, I think you were in the middle of answering it. You talked about how Collins has prospective and retrospective. I don't read that to mean like prospective, like how would you amend the statute? They're talking personally for your client, for the employer here. You haven't asked for any prospective remedy. You didn't ask for an injunction or anything like that. You've asked for, you've asked retrospectively, right, that the decision be vacated so that you don't have to pay the benefits. But is there any, my, you know, retrospectively, is there any argument that you're entitled to a redo basically after Collins? That is, it's difficult for me to kind of separate the two because the way that we see it, Your Honor, is that the judge did not have the authority to make the final decision to preside over the case. Of course, we have two different ALJs, but also they didn't have the power because of the inferior officers being insulated from review by principal officer. That came from Arthrex. So when we have Arthrex and Collins, I guess I'm seeing two different things. What I see is that our clients and private citizens in general can't have confidence in a system where we don't know who's making the decisions. And with an inferior officer, I know that the Ninth Circuit just rarely ruled on this as well. They talked about the Benefits Review Board having review as well. But the ALJ is an inferior officer. The BRB is an inferior officer, which is the Secretary of Labor. What Arthrex said is that the inferior officer needs to be reviewed by a principal officer. And so what we see is that there's really no confidence in a system where we can't tell if the elected official is actually in control and accountable for these decisions. Now, I don't know that I can really relate to you what the compensable harm is, if that's what the court is requiring from us, is that we have some sort of compensable harm. Now, what we have is a client who's being forced to pay money by a judge who doesn't have the authority or the power to make the decisions for the executive branch. And so is that enough to raise to what the Supreme Court has asked for? I don't know because they really didn't make the decision. They kind of left that to the lower courts. But does that answer your question? Kind of. I'm running out of time, but I hope that that does. So since I can't really say much in two seconds, thank you, Your Honors. You've got time for a rebuttal. Ms. Mundell, is that right? Yes, Your Honor. Good afternoon, and may it please the court, Amanda Mundell on behalf of the Department of Labor. I understand counsel's argument today with respect to the ratification, and I just want to quickly dispel any doubts that the appointments here were not properly made. It seems like petitioner's challenge to ALJ Bartow really centers on the hiring process and whether the secretary could ratify that process. That's not what we're talking about when we look at an appointments clause violation. The question there is simply whether the secretary who has the authority to make appointments as the head of a department, whether the secretary appointed a particular ALJ, like ALJ Applewhite, or whether the secretary exercised his authority to ratify the decisions of his staff members. That's all we're concerned with, and ALJ Bartow here, that appointment was properly ratified by the secretary. In fact, the secretary had the same materials that the department would have otherwise had before him, the resumes, the credentials, experience, and a recommendation, of course, to that effect. So we don't see any constitutional concern with the appointment of ALJ Bartow, and then as I mentioned with ALJ Applewhite, that was a direct appointment by the secretary of labor. So we see no constitutional problem there. If I may then turn to the heart of the issue, which I think is the removal protection scheme here, I'd like to just take a step back and make sure we're all on the same page about how these different pieces all fit together. So within the Department of Labor, an ALJ exercises that typical adjudicatory authority to review benefits determinations apply law to fact. Those decisions by ALJs are reviewable by the Benefits Review Board within the Black Lung context. The Benefits Review Board's members are answerable to the secretary. They're removable at will from the board. So within that direct change of the chain of command, there's no question that even though ALJs are protected by this tenure protection of good cause, that the secretary of labor, and of authority over ALJ determinations. Now, there's also this piece with the, yes, your honor. Counsel, is this the position in your brief, or does the government have a new position now? I thought, do I not have the most recent brief? The most recent brief I thought I had said that we could sustain this system only if we kind of hobbled the Merit Systems Protection Board. Is that still the government's position? Yes, your honor. And I'm just trying to explain how these pieces fit together. Okay. Absolutely. So turning then to the MSPB, the way that that fits into this scheme is the MSPB's role there is to establish and determine the good cause that the secretary has identified for removing a particular ALJ. Now, the Supreme Court has long made clear that tenure protections for inferior officers like ALJs are constitutional, and particularly good cause tenure protections. And that sort of means that the ALJs can be removed for misconduct as the court considered in Morrison and Perkins for poor performance and actions like that. Now, the MSPB's role in this system is simply to look at that factual basis that the secretary puts forward, whether an ALJ has engaged in poor performance or engaged in misconduct, and make sure that that is a good safe basis that's supported by the secretary's determination. Yes, your honor. Okay. So your brief, I'm sorry, because it will just help me sort of contextualize this. Your brief is the government's position, but I thought you also said in your 28J letter that you agree with the Ninth Circuit and Decker-Cole. Is that not right? Yes, your honor. Decker-Cole... Well, Decker-Cole does not adopt the government's position in its brief. Decker-Cole says, we don't have to narrow... They're not adopting your narrowing construction of the authority of the Merit Systems Protection Board. They're saying, this is just fine on its face. We don't have to narrowing construction. So I am genuinely confused. And I will tell you why I care about this, because I think if we were to reach the merits in this case, we would need a brief that actually defends the system as it stands without adopting a narrowing construction. And I am wondering, will we be getting that brief from the government consistent with Decker-Cole, or do we need to appoint an amicus the way they did in the DC Circuit? Well, your honor, we're prepared to defend the constitutionality of Section 7521, insofar as we think that it is properly understood as the MSPB's role here is limited to determining that factual basis for the removal by the secretary. Now, we agree, if that is not what the statute means, then there really would be constitutional problems here. But consistent with what we've said in our brief, the court has a duty to read this statute in a way that avoids any constitutional doubts. And we think the court can do that. Now, just with respect to the Decker-Cole opinion, your honor, we notified the court of that authority because that is an other court of appeals to consider whether Section 7521 needs to be struck down in any way. And the court there concluded that it does not pose any sort of limitation on the president's authority to exercise executive power. But it did that without adopting, sorry, but it didn't adopt your narrowing construction. And I may have misunderstood your letter. I thought you were saying you agree with Decker-Cole, but perhaps you are not. Your honor, I think Decker-Cole underscores some of those functionalist concerns about executive power here. The idea being that because ALJs... And that's what I'd like to ask you about. So I understand the government's position here to be a government's position in LUCIA on this issue, which the court did not address, which is that you need this narrowing construction. But the Ninth Circuit has found that it's fine as it is. And one of the reasons they gave is the function, as you just mentioned, that these ALJs are purely serving an adjudicatory function and not an executive function or a policymaking function. And I wanted to get your thoughts on that since you are representing the government. What are your... Is that right that they're only adjudicatory? If it's right, is it relevant? And are we looking just at what these ALJs do in black lung cases? Or are we looking at what these ALJs do in all the cases they handle for the Department of Labor, including regulatory enforcement and things like that? Because it's the same ALJ. So that's three questions, but I'll let you determine how you're going to answer them. Sure. So I'll try to take those one by one. So just with respect to the functionalist approach to the separation of powers question, we agree that the courts have considered over time, including in Decker Cole, whether or not the inferior officer is really executing the sort of substantial executive power that the president is most concerned about. The idea being that if there is severe restrictions on the exercise of that power, then that, of course, impedes the president's ability to take care that the laws are faithfully executed. Now, then Judge Kavanaugh, when he was sitting on the D.C. Circuit, embraced exactly this approach in his dissent in free enterprise funds. So we think that that is at least well-supported and is certainly a basis for this court to conclude that Section 75- But I'm asking about these ALJs, because ALJs across the federal system are very different, and they do different things in different departments, and they have different responsibilities. And so I want to know, do these ALJs, is all they do adjudicatory, and are we only looking at what they do in black lung cases? And is the adjudicatory function, is that dispositive? Your Honor, we think that these ALJs are doing that same sort of adjudicatory role that other ALJs in other agencies do. As far as the black lung context specifically, there's a slightly different review mechanism for ALJ determinations in the black lung benefits review context than there is for other DOL ALJs, but the basic premise is the same. ALJs function to review these claims. They take evidence. They hold hearings. They apply a lot of fact. And I don't say any of that to diminish the ALJs' role in the administrative state, but the fact is that they exercise comparatively limited executive power to the only other example of a dual-layer removal case, which is free enterprise funds. So compared to the PCAOB, for instance, there's a much more limited exercise of executive power by ALJs compared to that case. And that is significant because that is the only other example that Petitioner has pointed to where a court has said that the two-layer removal system interferes with the president's ability to take care. So should we focus on, or should we also be considering what else these ALJs do at the Department of Labor, that they're not just deciding black lung cases, but they're deciding regulatory enforcement and those sorts of cases? Or are we just looking, and it's a legitimate question. I don't know the answer. Are we just looking at what they do in a case like this? Well, Your Honor, I think this court could cabinet's review to the case like this. And I think that's important because of the Collins implications. At the end of the day, Petitioner is asking for a new hearing for this benefit, black lung benefits review determination before a new ALJ. And that is so attenuated and disconnected from any harm they've identified. They don't even challenge the substantive determination. So I think this court could certainly look at this context and say, within the context of this case, there's no removal protection issue. But I don't really think that what black lung benefits ALJs are doing is really all that different from other ALJs who are taking evidence and reviewing the record in that way. I want to make sure Judge Rushing's finished on this point, but I have a follow-up once y'all finish the question and answer. Are you good, Judge Rushing? Yeah, go ahead. Thank you. No, no, thank you. So, counsel, on the adjudicatory issue, I mean, you know, looking through all the cases on this is quite, you know, kind of hurts my brain, quite frankly. But the, and that had some, a lot of, you know, a lot of import on various decisions. But doesn't the Arthrex case go a long way in kind of, you know, diminishing that functional distinction? I mean, I know it's not a removal case in the exact same way, but it seems to pretty directly take on, you know, that they're all within the executive power. And while there can be, you know, functions that are adjudicatory and legislative as well as executive, they seem to diminish that, you know, more so than the law that existed, you know, even in Free Enterprise Fund. What's your thought on how we take that language from Arthrex, you know, in relation to the earlier case about, and I think, I mean, both are, I think that's a, you know, Chief Justice Roberts' case who wrote Free Enterprise Fund. So, it seems to undermine that distinction some. Your Honor, I don't believe that it does. I mean, I think it's important to consider Arthrex context where they're looking at removal protection from these administrative patent judges who were subject to a different removal statute and who any, in any event, didn't have sufficient control by agency supervisors and superiors. I think the point here is simply that it's not, it certainly is not a question about whether an ALJ exercises legislative or judicial function. They certainly exercise executive power. The question is, is the President's power to execute the laws so impeded by this combination of removal protections? Well, that's a, I'm sorry to interrupt you, but I mean, I get that issue. I mean, there may be a point that whether or not the other things make the, you know, impediment not so great. And that to me is a separate issue than the adjudicatory function issue. And, but then on Arthrex, on the function, it says the APJs, and I note, are still exercising judicial power and must remain dependent on the President. And then it goes on to say the activities of executive officers may take legislative and judicial forms, but they are still exercise of, indeed, under our constitutional structure, they must be exercises of executive power. It seems like that's going away from that issue. And, you know, maybe there's not enough impediment to the executive's ability to conduct his job, but that's a different issue, isn't it, than whether they're adjudicatory or not? Your Honor, I would agree. And I want to make sure that I haven't misled either you or Judge Rushing in our earlier colloquy on that. I'm not suggesting that this Court should focus on whether ALJs exercise judicial power or legislative power. I think it all is intertwined in this executive power context. It's just a question of whether these removal protections so impede the function of the President's executive power. And so I didn't, and to the extent, Judge Rushing, that that was unclear, I apologize. We are not disagreeing with that executive power notion. We simply think that the removal restrictions here, the way that they operate, do not impede that power. And that's the functionalist perspective I'm talking about. Counsel, I hate to take you from, like, the sublime of constitutional theory down to the details of this case, but so, but I will for a minute because I'd like you to address the procedural posture. Do you all have a position on whether the Benefits Review Board properly applied its regulatory exhaustion requirement in holding that petitioner forfeited this argument? And I kind of would expect you would because that was your argument before the Board, that they had not presented this issue in a way that merited a decision on the merits and the Board adopted the government's or the Board's, the Board adopted that position. And if that, if they were not arbitrary and capricious, then it's not in front of us. So, so can you address sort of the procedural posture of this case? Certainly, Your Honor. And we have not pressed that argument on appeal. We did argue below that that was an insufficient way to raise the issue, but we think that it's a pure question of law. This has certainly been briefed at this point. Well, but we have a million cases saying that if an issue is forfeited before the Board, we don't even have jurisdiction to reach it. We're not supposed to reach it. It's forfeited. And Your Honor, all I can say is we didn't raise that argument on appeal. If this Court examines the procedural posture and applies the agency's forfeiture rule and concludes that it was forfeited, that's not something that we are opposing here, but we haven't... Did you change your mind? I mean, you thought it was forfeited, but do you think now maybe it wasn't? Your Honor, all I can say is we have not pressed that argument. We think it's an important issue that this Court can reach. And do we have cases saying that even if the agency properly applies its forfeiture rule and holds the issue forfeited, we can go ahead and reach it? Your Honor, I'm not aware of cases on either end, but it's a forfeiture issue, not a waiver issue. So I suppose... Okay. ...the Court can reach it. Maybe. Thank you. Your Honor, I see that I'm over time. So unless there are other questions, we've simply asked that the Court deny the petition. Thank you. And then finally, we have Mr. Austin. Thank you so much, Judge Harris. And good afternoon to the Court. May it please the Court. I'm Brad Austin. I represent the coal miner in this case, Mr. Michael King. And you've heard three main issues in this case. I would be remiss if I didn't at least just briefly mention the very thing that brings us here today, which is my client, Mr. King, who has now waited for... I wrote this down, four years, eight months, and one day for a run-and-run with Lucia. I do think it's very important to keep in mind that Mr. King does patiently await finality in this case. The solicitor has addressed the removal protections, which we both believe do not deprive DOL, ALJs of the authority to adjudicate black-owned cases. So I guess I should spend a little bit of time I have left talking about the ratification of Judge Applewhite. I think a good starting point is that ratification is presumed to be proper. And the burden to challenge that is on the moving party. So in this particular case, even if Judge Bartow was not properly appointed when he first began working as a DOL, ALJ, the Secretary of Labor's ratification on December 21, 2017, cured that defect. KNR argues that the Secretary of Labor rubber-stamped the decision because it was made on the same day as receiving the memorandum. But I think your honors have already pointed out that this really does approve a lack of consideration. It proves the importance of the decision. It proves the qualifications of the ALJs. And generally, these courts don't inquire into the agency's internal deliberations anyway. And as far as the cases that employer, or I guess KNR, has cited, the Hardin County case dealt with the Texas state constitutional provision, and the L.A. Tucker truck bombs case dealt with a separate issue that didn't involve ratification. So we certainly do not believe they have carried their burden as far as the ratification of ALJ Bartow. And secondly, moving on to the Secretary of Labor's appointment of Judge Applewhite, an appointment by a secretary need only be evidenced by an open unequivocal act, and that's the Marbury case. In this situation, the Secretary of Labor signed a letter properly appointing Judge Applewhite in 2018. The coal company is arguing that Judge Applewhite's appointment was defective because she remained in this competitive service after transferring to the DOL ALJ. But the executive order of KNR site specifically states that ALJs would be placed accepted service going forward, but those already in it would remain. The key point is that all of these ALJs are subject to the same quote-unquote good cause standard regardless of whether they're in competitive or executive accepted service. This good cause standard for removal is constitutional. Here, KNR cannot reasonably argue that the Secretary did not make an open unequivocal act. So, your honors, unless there's specific questions about any of these three issues, which of course a ratification of Judge Bartow appointment of ALJ Applewhite, or whether the removal protections are unconstitutional, I believe that the secretary, I'm sorry, the solicitor has already addressed these, and we would just respectfully request that this court take this opportunity because these Lucia-related issues are coming up. I think Judge Quattlebaum said, reading all of these decisions made his head hurt. I have to agree, your honor. You know, I'm down in the trenches representing the volume practice of coal miners, and I have to say that Lucia-related decisions are coming up in every single case. So, we would just ask this court to squarely address this issue, put this issue to rest, and in situations like this case, like, you know, Mr. Keene, who's been waiting for four years on a decision, a decision from this court could help clarify some of these issues. So, we would respectfully request this court to affirm the decision in order awarding benefits issued by Judge Applewhite, and the decision in order affirming benefits issued by the Benefits Review Board. Thank you so much, your honors. Thank you. And I think, Ms. Barger, you've got, I think, some rebuttal time. There we go. Thank you, your honor. I appreciate it, your honor. Just so that I know that I get to this issue in case the court does address it, the removal protections, I just wanted to address it real quickly unless there is another question that the court wanted me to answer. But the way that I see the removal protections right now, after reading Arthrex and Collins and Decker, is that there are really two issues that the courts are concerned with, and that is control and supervision, the control and supervision of the superior, the principal officer, control through the power to remove the ALJ if the ALJ is not performing correctly, or to the satisfaction of the executive power of the president, the supervision through the ability of the president or his head of department to review the decisions that are being made. If you really look at the structure of the federal black lung system in respect to supervision, especially, which was the ALJs are inferior officers, the board members, the benefits review members are inferior officers, and then you have the secretary of labor that the board members do. They are at the secretary of labor's leisure. What the Arthrex has said, and I thought it was an important remark by the Supreme Court, that the unchecked exercise of executive power by an executive president poses a constitutional issue, and I think that that's on the supervision area. What we're really talking about is that the secretary of labor is not able to really review what the ALJs are doing at the court level, the decisions that they are making, and so that leaves an issue of supervision within the scheme. Additionally, the structure of the federal black lung system in regard to control, this is where we really get to what was talked about with the removal protections, which is section 7521, which permits removal of the ALJ only for good cause determined by the MSBP, and then section 1202, which is the MSBP can only in turn be removed by the president for inefficiency, neglected duty, or malfeasance in the office. So, what free enterprise talked about, and why we quoted free enterprise, is that this is an impermissible statutory scheme which insulates the ALJ. The ALJ can only be removed for good cause by the MSPB, and they determine what good cause is, and then the secretary of labor can only remove the SVP for inefficiency, neglected duty, or malfeasance. We believe to be impermissible, and this is why we believe that there is an issue with the removal protections, because the control and supervision by the president, or those who he has appointed with the advice of senate, just aren't able to really control the ALJ, and so we're stating that they're too independent from the principal officers and the president of the United States for him to really effectively take care that he's doing his duty as the president. So, those are really the issues that I wanted to address on the removal protections. If there's anything additional that I can speak to with the court, I have about a minute and 30 seconds left. I'm happy to answer any questions that you have. All right, well, Ben, thank you, your honors. Really, what we ask is that you grant our petition, and it's been a pleasure being before you today. Thank you all very much. We appreciate your time, and we are sorry we cannot greet you in person. We hope we will see you in Richmond at some point in the future.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Allison J. Rushing